## The FUND FOR ANIMALS, INC., et al., Plaintiffs,

### v.

## Jack Ward THOMAS, Chief, United States Forest Service, et al., Defendants.

### Civil Action No. 95–1177 (TPJ).

United States District Court, District of Columbia.

Aug. 8, 1996.

Eric Robert Glitzenstein, Katherine Anne Meyer, Meyer & Glitzenstein, Washington, DC, for The Fund for Animals, Inc., Friends of the Bow, Biodiversity Legal Foundation, Northwest Ecosystem Alliance, Palouse Voice for Animals, Utah Wilderness Association, Donald J. Duerr, Leila R. Stanfield.

Michael J. Robinson, U.S. Department of Justice, Environment & Natural Resources

Division, Washington, DC, Joseph Robert Perella, U.S. Department of Justice, Environment & Natural Resources Division, Washington, DC, for Jack Ward Thomas, Dan Glickman, Bruce Babbitt, Mollie Beattie.

Paul Anthony Lenzini, Donelan, Cleary, Wood & Maser, P.C., Washington, DC, Kristi Sansonetti, Cheyenne, WY, for State of Wyo.

William P. Horn, Birch, Horton, Bittner & Cherot, Washington, DC, for Wildlife Conservation Fund of America.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

Plaintiffs are two individuals and six organizations of like-minded persons who make extensive use of the national forests for hiking, camping and similar non-predatory purposes. Defendants are the heads of the U.S. Forest Service and the U.S. Fish and Wildlife Service ("FWS") and their cabinet office superiors, the Secretaries of Agriculture and Interior, respectively. The State of Wyoming has intervened as a party-defendant. The subject of their dispute is the policy the Forest Service adopted and published, after several false starts, in March of 1995 respecting the controversial practice of "baiting" for wild game animals being hunted on the federal forest lands entrusted to its care. 60 Fed.Reg. 14720 (March 20, 1995). The case is presently before the Court on cross-motions for summary judgment. Plaintiffs allege that the policy is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, and must be set aside. *See* 5 U.S.C. § 706(2)(A).

The plaintiffs and their supporters regard the practice of "baiting" for game in general, and in particular, baiting for black bears, as odious. "Bear baiting" involves the placement of animal carcasses or offal, called "bait stations," in the vicinity of hunters' blinds to entice the animals into range by the scent. Plaintiffs say the bait stations are offensive to them in many respects. They are unsanitary, malodorous, unsightly, unsportsmanlike, and on occasion dangerous to non-hunters in the vicinity.

Plaintiffs' long-range objective is to cause the Forest Service, if it refuses to do so on its own, to assert complete and exclusive dominion over, and then to abolish most if not all hunting activity on federal forest lands. They would welcome a Forest Service regulation preempting any state law to the contrary to prohibit all game-baiting in the wilderness areas within its jurisdiction. For present purposes, however, they will be content with a judgment vitiating the Forest Service's current policy which they regard as no policy at all, and the worst of the alternatives proposed when the issue was open to public comment.[1]

While it is officially neutral on the subject of baiting in principle, the Forest Service's policy is to leave the decision to prohibit baiting, or to allow but regulate it as a "hunting practice" or technique, to the individual states in which a particular national forest is situated, as it does with most other matters relating to the management of the indigenous fauna, in accordance with common law, tradition, and what it understands to be the will of Congress as consistently expressed in the several statutes defining its mission. The common law has always regarded the power to regulate the taking of animals *ferae naturae* to be vested in the states to the extent "their exercise of that

---

1. The policy is expressed as an amendment to the Forest Service Manual. Game-baiting is defined as a "hunting practice" subject to state hunting laws, i.e., permitted on federal forest lands when and as permitted elsewhere in the state and *vice versa*, unless an authorized Forest Service officer "determines on a site-specific basis that there is a need to prohibit or restrict the practice." Although the decision to prohibit or impose restrictions on game-baiting is committed to the discretion of the officer on the scene, the circumstances warranting the officer's decision to do so are specified. If state laws or regulations fail to afford protection to forest

land, resources, or other users of the land in terms of water quality, public health and safety, or the "the viability of wildlife" and the like; if the "effects of baiting" are in conflict with the forest management plan; or if state laws and regulations contravene federal laws such as the Endangered Species Act, the Forest Service officer may take appropriate action to abate the offending activity. The policy also contemplates continuing contact between state and federal officials to harmonize, to the extent practicable, their respective rules governing the uses of forest lands generally and to coordinate enforcement activities. (A.R.Doc. 165).

power may not be incompatible with, or restrained by, the rights conveyed to the Federal government by the Constitution." *Geer v. Connecticut,* 161 U.S. 519, 527–28, 16 S.Ct. 600, 603–04, 40 L.Ed. 793 (1896). The National Forest System Organic Administration Act of 1897 establishing the national forest system reserved state civil and criminal jurisdiction over federal forest land to the states in which the forests were located, *see* 16 U.S.C. § 480, and each successive statute enacted since purporting to govern the management of the national forests has acknowledged and confirmed the situs states' continuing authority to regulate hunting and fishing thereon generally.[2]

Plaintiffs read the Forest Service's legislative mandate differently. They believe Congress has imposed fiduciary responsibilities on the Forest Service to conserve not only the forests themselves, but also their "primeval character" and "natural condition," *see* 16 U.S.C. § 1131(c), and thus by implication the animal populations that inhabit them. In particular, they contend that the Forest Service's new policy on baiting for game abdicates those responsibilities, and that, at a minimum, before it could lawfully do so the Forest Service had to comply with the National Environmental Policy Act, 42 U.S.C. §§ 4321 *et seq.* ("NEPA"), by preparing an environmental impact statement ("EIS") anticipating the consequences of a policy decision that plaintiffs perceive as a "major federal action significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). Plaintiffs assert that the Forest Service also ignored its obligation under the Endangered Species Act, 16 U.S.C. §§ 1532 *et seq.,* ("ESA"), a default in which it was abetted by its co-defendant Fish and Wildlife Service, to engage in "formal consultation" respecting the likelihood that bear-

baiting would jeopardize the continued existence of an "endangered" species, the grizzly bear, by enabling inadvertent "takings" of grizzlies over bait intended ostensibly to attract only black bear. *See* 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.14(a).

Whether an EIS is mandatory is initially determined by doing an Environmental Assessment ("EA"), 40 C.F.R. § 1501.4, or what is essentially a mini-EIS. If the agency's EA concludes that what it proposes to do is of negligible consequence to the environment, it issues a Finding of No Significant Impact ("FONSI"), as the Forest Service did here. (A.R. Docs. 160, 161). The Forest Service maintains that its policy of *laissez faire* is essentially one of inaction, i.e., a considered judgment to do nothing about game-baiting by leaving to the several states the responsibility for regulating the hunting of their wildlife, including baiting, unless and until a federal interest is seen to be imperilled in individual cases by an officer on the scene. In other words, the Forest Service's decision to revert to its traditional reliance upon the states to regulate all hunting practices, including game-baiting on federal forest lands in which they are situated was not a "major federal action" at all in the sense intended by NEPA. Its EA was as superfluous as its policy is environmentally innocuous.

Defendants' response to the charge that they disregarded their mutual duty of consultation under the ESA is that they initially consulted "informally," pursuant to 50 C.F.R. 402.13(a), to ascertain if formal consultation were even needed. Both agencies agreed that it was not. Neither the grizzly bear nor any other endangered or threatened species (e.g., bald eagle, gray wolf) were "likely to [be] adversely affect[ed]." (A.R. Doc. 160,

---

**2.** The Multiple–Use Sustained Yield Act of 1960, 16 U.S.C. at § 528; the National Forest Management Act of 1976, 16 U.S.C. at §§ 1600(3) and 1601(d) (incorporating, *inter alia,* 16 U.S.C. § 528); and the Federal Land Policy and Management Act of 1976, 43 U.S.C. at § 1732(b).

According to plaintiffs, some states have outlawed game-baiting altogether, and all but ten prohibit baiting for bears. Only Wyoming, however, until recently, imposed no restrictions at all on baiting for bears. Consequently, in Wyoming

(and possibly in some forests in other western states) the Forest Service officers in charge of particular forests had developed a local practice of requiring hunters to obtain "special use" permits for bear bait stations, specifying conditions for their placement and removal. In 1992 Wyoming adopted comprehensive regulations governing bear-baiting. In accordance with its new policy, therefore, the Forest Service no longer generally requires "special use" permits anywhere for bait stations.

Appendix B, Letter of 3/14/95 from FWS to Forest Service.)

Plaintiffs cite such well-known leading cases as *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), and *Natural Resources Defense Council v. Herrington*, 768 F.2d 1355 (D.C.Cir.1985) stressing the importance Congress attaches to official cognizance on the part of federal agencies of the environmental consequences of their activities, and the comprehensive forethought expected of them to avert harmful impacts whenever possible. Of more immediate application to the instant case, however, are such cases as *Defenders of Wildlife v. Andrus*, 627 F.2d 1238 (D.C.Cir. 1980) and *State of Alaska v. Andrus*, 591 F.2d 537 (9th Cir.1979), in which two circuit courts of appeals declined to force federal officials to prepare an EIS before allowing state-sanctioned programs for the destruction of wildlife on federal property to go forward, relief similar to that sought by plaintiffs here on the basis of much the same statutory authority as plaintiffs rely upon here.

On balance the Court finds defendants to have the better of the argument. Plaintiffs are simply exerting their efforts in the wrong forum. If Congress intends to exercise the undoubtedly plenary power of the federal government over hunting on federal forest lands in any respect, it has only to say so, "the game laws or other statute of [a] state to the contrary notwithstanding." *Hunt v. United States*, 278 U.S. 96, 100, 49 S.Ct. 38, 38, 73 L.Ed. 200 (1928). Indeed, Congress has done so expressly in such legislation as the ESA, by preempting state laws less protective of endangered or threatened species wherever found throughout the United States, *see* 16 U.S.C. § 1535(f), and the Act of August 11, 1916, 16 U.S.C. § 683, authorizing certain federally owned land to be set aside as game refuges. In the absence of such explicit statutory direction, however, the Forest Service has concluded that its assertion of a general regulatory power over the practice of game-baiting in the national forests, as plaintiffs want it to do, would be, if not *ultra vires*, well within its discretion to eschew. The Court agrees.

For the foregoing reasons, therefore, it is, this 8th day of August, 1996,

ORDERED, that plaintiffs' motion for summary judgment is denied; and it is

FURTHER ORDERED, that defendants' motion for summary judgment is granted, and this case is dismissed.