The FUND FOR ANIMALS, INC., et al., Appellants,

v.

Jack Ward THOMAS, Chief of the United States Forest Service, et al., Appellees.

No. 96–5298.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 4, 1997.

Decided Oct. 17, 1997

Eric R. Glitzenstein, Washington, DC, argued the cause for the appellants. Katherine A. Meyer was on brief.

Jeffrey C. Dobbins, Attorney, United States Department of Justice, Washington, DC, argued the cause for the federal appellees. Lois J. Schiffer, Assistant Attorney General, and Ellen J. Durkee, Attorney, United States Department of Justice, were on brief.

Paul A. Lenzini, Special Assistant Attorney General, State of Wyoming, argued the cause for appellee State of Wyoming.

William P. Horn and Douglas S. Burdin, Washington, DC, were on brief for amicus curiae Wildlife Conservation Fund of America. Thomas L. Albert entered an appearance.

Before: WILLIAMS, GINSBURG and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

The appellants, five environmental groups and two individuals, challenge the national policy of appellee United States National Forest Service (Forest Service) which leaves regulation of game "baiting" on National Forest System (Forest System) lands to the states in which the lands lie.[1] See Use of Bait in Hunting, 60 Fed.Reg. 14,720 (1995). The appellants maintain that in promulgating the policy the Forest Service violated both the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321 et seq., by failing to first prepare an environmental impact statement (EIS), and the Endangered Species Act (ESA), 16 U.S.C. §§ 1531 et seq., by failing to formally consult the Fish and Wildlife Service (FWS) regarding the policy. For the reasons set forth below, we conclude that the policy does not constitute a "major federal action" triggering NEPA's EIS requirement and that the Forest Service satisfied its duty to consult FWS. Accordingly, we affirm the district court's judgment in favor of the Forest Service. See Fund for Animals, Inc. v. Thomas, 932 F.Supp. 368 (D.D.C. 1996).

## I.

"Baiting" is the practice of placing bait, either food or scent, to attract wild game to a particular hunting location. See 60 Fed.Reg. at 14,721; 932 F.Supp. at 369. Bear baiting is prohibited in most states but remains lawful in Alaska, Idaho, Maine, Michigan, Minnesota, New Hampshire, Utah, Wisconsin and Wyoming.[2] At one time Forest Service officials regulated the practice in some states by issuing to hunters and guides special use permits that imposed specific conditions on their baiting activities. On March 23, 1992 the Forest Service replaced its special use permit regime in Wyoming with a "closure" order that established conditions for bear baiting generally on Forest System lands in Wyoming and prohibited the practice altogether in specified grizzly bear management areas and within set distances of various amenities, such as open water, residences and roads. A suit was filed challenging the regulatory change on the ground that the Forest Service had failed to prepare an EIS as required by NEPA. As part of a settlement the Forest Service agreed to a temporary return to special use permits in Wyoming pending a NEPA analysis.

Pursuant to the settlement the Forest Service prepared an environmental analysis (EA), dated February 19, 1993, that considered various options for regulating baiting on Forest System lands in Wyoming, including retaining special use permits, allowing Wyoming to assume regulation and banning baiting altogether. After preparing a "biological evaluation" of its preferred alternative, state regulation, the Forest Service issued a "Decision Notice and Finding of No Significant Impact" on April 2, 1993, in which it announced its decision to transfer regulation of baiting to the State of Wyoming, which at that time had only recently adopted its own baiting regulations. The document expressly concluded that the change to state regulation in Wyoming was "not a major federal action"

---

1. "[T]he National Forest System consists of units of federally owned forest, range, and related lands throughout the United States and its territories, united into a nationally significant system dedicated to the long-term benefit for present and future generations...." 16 U.S.C. § 1609(a). It includes national forest lands, national grasslands and land utilization projects administered by the National Forest Service. Id.

2. In its 1994 publication of the proposed national policy, discussed infra, the Forest Service observed that the only states in which bear baiting remained legal were Alaska, Idaho, Maine, Michigan, Minnesota, New Hampshire, Utah, Washington, Wisconsin and Wyoming. Since that time Washington State has outlawed the practice. See Wash. Rev.Code Ann. § 77.16(1) (West elec. update 1997).

and "will not significantly affect the quality of the human environment." JA 329.

On April 6, 1993 the Forest Service requested formal consultation with the FWS pursuant to ESA. On April 14, 1993 the FWS issued a "biological opinion" concluding that "none of the alternatives analyzed are likely to jeopardize the continued existence of any endangered or threatened species," JA 332, but setting out specific non-discretionary conditions to avert the "remote possibility that a grizzly bear may be taken as a result of black bear baiting," JA 338, as well as discretionary conservation recommendations. The new Wyoming policy was never implemented because the Forest Service, under threat of further litigation, declared a temporary ban on all bear baiting on Forest System lands in Wyoming while it prepared a comprehensive national baiting policy.

On March 14, 1994 the Forest Service published an interim national policy that adopted on a national scale the approach proposed for Wyoming in the 1993 policy. The interim policy eliminated special use permits and left baiting regulation entirely in the hands of the individual states, subject to Forest Service closure of particular Forest System lands in the event of inadequate state regulation. Use of Bait in Hunting, 59 Fed. Reg. 11,765 (1994). A suit was filed challenging the interim policy and the Forest Service agreed to withdraw it and return to the previous policy which prohibited bear baiting altogether in Wyoming and left the practice to state regulation elsewhere. Accordingly, on April 14, 1994 the Forest Service issued a notice of withdrawal of the interim policy and a request for public comment on a proposed national policy which generally tracked the interim policy. Use of Bait in Hunting, 59 Fed.Reg. 17,758 (1994).

On February 13, 1995 the Forest Service issued a biological evaluation of the proposed national policy, concluding that it "will programmatically benefit (is not likely to adversely affect) the bald eagle, gray wolf and grizzly bear on [Forest System] lands." JA 518–19 (emphasis in original). The Forest Service then requested review of its evaluation from FWS which responded by letter dated February 27, 1995: "The proposed National Policy appears to be consistent with our biological opinion of April 14, 1993, and no information has become available to suggest that additional terms and conditions are necessary at this time." JA 522. Based on discussions with Forest Service personnel and internal analyses, FWS stated definitively in a March 14, 1995 letter: "[W]e concur in your determination that the proposed national policy on baiting is not likely to adversely affect listed species." JA 467. The Forest Service then issued an EA which concluded that "the environmental consequences" of the proposed policy "would be negligible," JA 485, noting that the policy "provides safeguards in all States allowing baiting," JA 486.

On March 15, 1995 the Forest Service issued a "Decision Notice and Finding of No Significant Impact" which adopted the proposed national baiting policy and concluded that "an environmental impact statement is not needed" because its "actions are not a major Federal action, individually or cumulatively, and will not significantly affect the quality of the human environment." JA 555. The Forest Service published the final policy on March 20, 1995, stating:

Having considered the comments received, the Forest Service is adopting a final policy on the use of bait on National Forest System lands. The policy retains the long-standing reliance on State regulation of baiting resident game. Where State law and regulation permit baiting the practice is permitted on National Forest System lands unless the authorized officer determines on a site specific basis that the practice conflicts with Federal laws or regulations, or forest plan direction, or would adversely affect other forest uses or users.

60 Fed.Reg. at 14,722.

On June 21, 1995 the appellants filed this suit challenging the final policy. On August 8, 1996 the district court granted summary judgment in the Forest Service's favor. The appellants appeal the judgment.

## II.

The appellants raise the same two arguments here as below: that the Forest Service

(1) failed to prepare an EIS as required by NEPA and (2) failed to formally consult with and obtain a final biological opinion from FWS as required by ESA. We address each statute separately.

## A. NEPA

First, the appellants contend that an EIS was required under NEPA because the new policy was a "major Federal action[ ] significantly affecting the quality of the human environment" within the meaning of NEPA § 102, 42 U.S.C. § 4332. Section 102 requires that federal agencies

> include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on
>> (i) the environmental impact of the proposed action....

42 U.S.C. § 4332(2)(C). It is clear from this language that the EIS requirement is triggered only by a "major Federal action[ ]." Thus, where there is no such action, there is no EIS obligation. *See Macht v. Skinner*, 916 F.2d 13 (D.C.Cir.1990); *District of Columbia v. Schramm*, 631 F.2d 854, 862 (D.C.Cir.1980). Because we conclude the national baiting policy is not a major federal action, the Forest Service has no EIS obligation.

Assuming that the final policy constitutes federal "action" at all—because it implements the existing federal policy of leaving baiting regulation to individual states that have adopted adequate regulatory provisions [3]—we nevertheless agree with the Forest Service that it is not a "major" federal action under NEPA. In the 1995 EA, the Forest Service asserted that "Wyoming is the only State where special use permits have been recently used to regulate placement of bait for hunting" and that "the environmental consequences of shifting from the Forest Service issuing permits for baiting in Wyoming to the State Game and Fish Department administering the program ... would be negligible." JA 485. Both statements find substantial support in the administrative record and compel the conclusion that adoption of the new policy is not a major federal action requiring an EIS under NEPA.

First, the record indicates that since 1988 the Forest Service has regulated baiting in only three of the nine states in which baiting remains lawful—Idaho, Utah and Wyoming. Further, it appears that at least since spring 1993, when the Forest Service agreed to ban baiting in Wyoming pending adoption of a national policy, baiting in Idaho and Utah has been subject to state, not federal, regulation. Thus, by 1995, when the national policy was adopted, baiting remained federally regulated only in Wyoming and the shift at that time from federal to state regulation had no effect outside Wyoming.[4] As for Wyoming itself, the effect there was minimal because the substantive requirements of Wyoming's regulations vary only insignificantly from those of the federal special use permit conditions they replaced. The Wyoming regulations prohibit baiting in grizzly bear habitats, as did the federal conditions, and impose equally stringent limitations on the number of baits per permittee, bait density, the distance of baits from roads, trails and camping and picnic grounds, the composition of baits, removal time after hunting season and placement of identifying information at baiting

---

3. The Forest Service's decision to refrain from future regulation of baiting may not constitute "action" at all. *See Defenders of Wildlife v. Andrus*, 627 F.2d 1238 (D.C.Cir.1980) (NEPA did not require Department of Interior to prepare EIS before "allowing" Alaska Department of Fish and Game to conduct airborne shoot of wolves on federal lands because complained-of decision was "inaction," not action); *Cross-Sound Ferry Servs., Inc. v. ICC*, 934 F.2d 327, 334 (D.C.Cir.1991) (Interstate Commerce Commission's determination that ship company's services were "ferry services" exempt from future regulation held not federal "action" under

NEPA, notwithstanding Commission's prior contrary determination, because declining to assert jurisdiction "plac[ed] the case squarely within the 'inaction' rubric of *Defenders of Wildlife*").

4. One of the Forest Service's justifications for promulgating the interim policy in 1994 was that "[i]t is unfair to continue the bear baiting prohibition in Wyoming when such a prohibition is not in effect on other National Forest System lands in other States where the practice is permitted...." 59 Fed.Reg. at 11,766.

sites.[5] Because the new national policy maintained the substantive *status quo,* it cannot be characterized as a "major federal action" under NEPA. *See Committee for Auto Responsibility v. Solomon,* 603 F.2d 992, 1002–03 (D.C.Cir.1979) ("The duty to prepare an EIS normally is triggered when there is a proposal to change the status quo.") (footnote omitted); *Sierra Club v. Andrus,* 581 F.2d 895, 902 (D.C.Cir.1978) ("In general, however, if there is no proposal to change the status quo, there is in our view no 'proposal for legislation' or 'other major Federal action' to trigger the duty under NEPA to prepare an EIS."), *rev'd in other respect,* 442 U.S. 347, 99 S.Ct. 2335, 60 L.Ed.2d 943 (1979). "The[r]e being no 'major Federal action,' the Agency was not required to prepare an environmental impact statement." *District of Columbia v. Schramm,* 631 F.2d at 862 (footnote omitted).

### B. ESA

■ Next, the appellants assert that the Forest Service violated its duty under ESA to obtain a biological evaluation from FWS before adopting the final policy in 1995. "Section 7(a) of the ESA provides that each agency shall, in consultation with FWS, 'insure that any action authorized, funded, or carried out by such agency ... is not likely to jeopardize the continued existence of any endangered species or threatened species....'" *American Iron & Steel Inst. v. EPA,* 115 F.3d 979, 1003 (D.C.Cir.1997) (quoting 16 U.S.C. § 1536(a)(2)). To the extent that there was an ESA consultation obligation,[6] the Forest Service and FWS fulfilled it by engaging in "informal consultation" in February and March 1995 pursuant to the "joint regulations" promulgated by FWS and the National Marine Fisheries Service. *See* 50 C.F.R. § 402.13(a) ("Informal consultation is an optional process that includes all discussions, correspondence, etc., between the Service and the Federal agency

or the designated non-Federal representative, designed to assist the Federal agency in determining whether formal consultation or a conference is required. If during informal consultation it is determined by the Federal agency, with the written concurrence of the Service, that the action is not likely to adversely affect listed species or critical habitat, the consultation process is terminated, and no further action is necessary.").

For the preceding reasons, the judgment of the district court is

*Affirmed.*

---

**5.** The Wyoming regulations exceed the former federal requirements in requiring that all baits be enclosed in "a rigid container of wood, metal or plastic no larger than eight cubic feet." JA 239. The only respect in which the federal restrictions may have exceeded Wyoming's was in their requirement, for the Bridger Teton National Forest only, that a bait "consist of no more than 25

pounds of animal parts" and not include "animal carcasses." JA 169.

**6.** If promulgation of the policy constituted "inaction," *see supra* note 3, there most probably would have been no "agency action" to trigger the ESA consultation requirement.