In re INTERNATIONAL CHEMICAL WORKERS UNION and Public Citizen Health Research Group, Petitioners.

No. 87–1281.

United States Court of Appeals, District of Columbia Circuit.

Oct. 9, 1987.

---

David C. Vladeck, Alan B. Morrison, and Eric R. Glitzenstein, Washington, D.C., were on the brief, for petitioners.

George R. Salem, Sol. of Labor, with whom Cynthia L. Attwood, Associate Sol., Sandra Lord, Acting Counsel, and Andrea C. Casson, Asst. Counsel, Washington, D.C., were on the brief, for the Secretary of Labor.

Before ROBINSON and D.H. GINSBURG, Circuit Judges, and MacKINNON, Senior Circuit Judge.

PER CURIAM:

The International Chemical Workers Union and Public Citizen Health Research Group ("Petitioners") have petitioned the court for a writ of mandamus. Petitioners seek to compel the Secretary of Labor and the Assistant Secretary for the Occupational Safety and Health Administration ("agency" or "OSHA") to take emergency action to protect workers from the deleterious effects of exposure to cadmium. We have treated the petition for a writ of mandamus as a petition for review of OSHA's final decision not to issue an emergency temporary standard ("ETS") for cadmium. Following a thorough review of the record, we deny the petition for review.

## I.

On June 25, 1987, petitioners filed a petition for a writ of mandamus and a motion to expedite with the court. Petitioners sought the writ to compel OSHA to issue an ETS that would significantly lower the permissible exposure limits for cadmium in the workplace. Petitioners had, more than a year before, filed a rulemaking petition with OSHA requesting such emergency action pursuant to 29 U.S.C. § 655(c) (1982).[1] At the time the petition for a writ of mandamus was filed with the court, OSHA had failed to act upon the request for emergency rulemaking.

On July 1, OSHA denied the petition for an ETS. Unaware that the agency had finally acted to deny the rulemaking request, we granted, on July 2, the motion to expedite review of the petition for a writ of mandamus. We also ordered that all briefing be completed by July 30, 1987. We now have the benefit of final agency action and full briefing by the parties. Thus, in view of the unusual circumstances recited *supra*, and because of the judicial economy involved, we will treat the petition for a writ of mandamus as a petition for review of OSHA's denial of the petition for an ETS for cadmium.

## II.

We have recognized in the past that the authority to establish emergency standards pursuant to 29 U.S.C. § 655(c) is an "extraordinary power" that is to be "delicately exercised" in only certain "limited situations." *Public Citizen Health Research Group v. Auchter,* 702 F.2d 1150, 1155 (D.C.Cir.1983). We have further recog-

---

1. That section provides:

(1) The Secretary shall provide, without regard to the requirements of chapter 5 of Title 5, for an emergency temporary standard to take immediate effect upon publication in the Federal Register if he determines (A) that employees are exposed to grave danger from exposure to substances or agents determined to be toxic or physically harmful or from new hazards, and (B) that such emergency standard is necessary to protect employees from such danger.

(2) Such standard shall be effective until superseded by a standard promulgated in accord-

ance with the procedures prescribed in paragraph (3) of this subsection.

(3) Upon publication of such standard in the Federal Register the Secretary shall commence a proceeding in accordance with subsection (b) of this section, and the standard as published shall also serve as a proposed rule for the proceeding. The Secretary shall promulgate a standard under this paragraph no later than six months after publication of the emergency standard as provided in paragraph (2) of this subsection.

nized that emergency standards are an "unusual response" to "exceptional circumstances." *Id., see Florida Peach Growers Ass'n, Inc. v. United States Dep't of Labor,* 489 F.2d 120, 129 (5th Cir.1974); *Dry Color Manufacturers' Ass'n, Inc. v. United States Dep't of Labor,* 486 F.2d 98, 104 (3d Cir.1973).

In deciding whether to exercise the "extraordinary power" to issue an ETS, OSHA must determine whether "employees are exposed to grave danger" and whether an emergency standard is "necessary" to protect them from such danger. 29 U.S.C. § 655(c). Such a determination is necessarily based upon " 'considerations of policy as well as empirically verifiable facts' ". *Public Citizen Health Research Group v. Auchter,* 702 F.2d at 1156, *quoting Industrial Union Dep't v. American Petroleum Institute,* 448 U.S. 607, 655 n. 62, 100 S.Ct. 2844, 2871 n. 62, 65 L.Ed.2d 1010 (1980). OSHA's assessment of such facts, which are often scientifically complex, and its balancing of the competing policies that underlie the decision whether to issue an ETS, are entitled to great deference. *Id.* Our limited review is not to determine whether we, as a reviewing court, would issue emergency standards for cadmium, but rather, whether OSHA's decision not to issue such standards lacks support in the record. *Id.* We cannot say that such support is lacking here.

### III.

The current OSHA standard for cadmium has been in effect for over sixteen years. Adopted from a national consensus standard in 1971, the current OSHA standard allows for a maximum permissible exposure level over an eight hour workshift (time weighted average or "TWA") of 100 ug/m³ (micrograms per cubic meter) for cadmium fumes and 200 ug/m³ for cadmium dust. The standard was promulgated pursuant to section 6(a) of the Occupational Safety and Health Act ("Act") which provided for a two year period after the adoption of the Act for promulgation of national consensus standards as occupational safety and health standards. *See* 29 U.S.C. § 655(a). The standard for cadmium has never been revised.

It is undisputed, however, that in the sixteen years since the adoption and promulgation of the current cadmium standard, that reliable clinical and epidemiological research has established a clear link between cadmium exposure and irreversible kidney damage. In addition, studies of workers with occupational exposure to cadmium support a connection between cadmium and an increased risk of lung and prostate cancer. Indeed, OSHA has determined that the risk of lung cancer or kidney damage at current permissible exposure levels is "significant."

In response to the growing evidence of irreversible kidney damage and cancer at current permissible exposure levels, petitioners filed a rulemaking petition with OSHA in June of 1986. Petitioners sought an ETS pursuant to 29 U.S.C. § 655(c) that would lower occupational exposure to cadmium and cadmium compounds to an eight hour TWA of 1 ug/m³.

In support of their petition, petitioners relied upon an extensive array of reports and studies, some sixty in number, which, in their view, establish that actual exposure levels of cadmium in the workplace pose a grave risk of kidney damage and cancer. For its part, OSHA agrees that there is "clear evidence" that exposure to cadmium can result in irreversible kidney damage. Moreover, OSHA also agrees that the risk of lung cancer at current permissible levels appears to be significant.

OSHA concluded, however, that to be a "grave danger," it is not sufficient that a chemical, such as cadmium, can cause cancer or kidney damage at a high level of exposure. Rather, it is necessary, in OSHA's view, that a finding of "grave danger" to support an ETS be based upon exposure in actual levels found in the workplace. OSHA concluded that the currently available data was not sufficiently definitive on actual exposure levels to justify an ETS.

In *Auchter,* petitioners challenged OSHA's refusal to issue an ETS for ethy-

lene oxide. The district court[2] found that OSHA had abused its discretion under the Act by denying an ETS, and ordered the agency to issue emergency standards within twenty days. *Public Citizen Health Research Group v. Auchter,* 554 F.Supp. 242 (D.D.C.1983). We reversed. We held that given the "statistically small sampling and the paucity of current data concerning *actual* Et0 exposure levels," that "we must defer to the Assistant Secretary's determination that the available evidence is inadequate to show the existence of a 'grave danger' necessitating an emergency standard." *Public Citizen Health Research Group v. Auchter,* 702 F.2d at 1157 (emphasis added). That conclusion is equally applicable here.

OSHA has determined that the currently available data on actual workplace exposure is deficient because it is skewed to the high side. Specifically, in deciding whether to issue an ETS, OSHA has relied upon data generated by OSHA inspections involving cadmium and health hazard evaluations compiled by the National Institute on Occupational Safety and Health ("NIOSH"). These studies were found to be biased on the high side because both the OSHA inspections and NIOSH evaluations are conducted in response to specific employer or employee requests. Thus, the data generated by these reports invariably reflect conditions at a workplace where there is already reason to believe that an exposure problem exists. Thus, extrapolations based upon such samples are, according to OSHA, necessarily biased to the high side.

In addition, not all OSHA inspection data has been entered into the agency's data bank. Inspections that resulted in citations, as a result of exposure that exceeded the permissible limits, are most likely to be entered into the data system. This further skews the data on actual exposure levels to the high side.

Although we are unable to conclude, as in *Auchter,* that the data currently available to OSHA is so scarce that "we are unable to venture even a guess" as to existing exposure patterns, the concerns voiced by the agency regarding the reliability of the data are reasonable ones. We recognize that in deciding whether to issue an ETS, OSHA must make both factual and policy judgments on the basis of information that may be incomplete. *Public Citizen Health Research Group v. Auchter,* 702 F.2d at 1155. The determination of when it may be appropriate to proceed on the basis of incomplete data, however, is a decision largely entrusted to the expertise of the agency. *Id.* at 1156. As we stated at the outset, the authority to adopt emergency standards is an "extraordinary power." We simply hold that OSHA acted reasonably in choosing not to exercise that power on the present facts.

---

2. The challenge to OSHA's refusal to issue an ETS in *Auchter* was brought prior to this court's decision in *Telecommunications Research and Action Center v. FCC,* 750 F.2d 70 (D.C.Cir.1984). Thus, believing that jurisdiction properly lay in the district court, petitioners filed suit there rather than filing a petition for review in this court. It is clear, however, after TRAC, that this court has exclusive jurisdiction to review OSHA's refusal to issue an ETS pursuant to 29 U.S.C. § 655(c). *International Union, UAW v. Donovan,* 756 F.2d 162, 163 (D.C.Cir.1985).