

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-16-1998

# Oil Chem Atomic v. OSHA

Precedential or Non-Precedential:

Docket 97-3532

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

## Recommended Citation

"Oil Chem Atomic v. OSHA" (1998). *1998 Decisions.* Paper 50.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/50

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 16, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-3532

OIL, CHEMICAL AND ATOMIC WORKERS UNION
and PUBLIC CITIZEN'S HEALTH RESEARCH GROUP,

      Petitioners,

v.

OCCUPATIONAL SAFETY AND HEALTH
ADMINISTRATION, GREGORY WATCHMAN, Acting
Administrator of the Occupational Safety and Health
Administration, ALEXIS HERMAN, Secretary of  Labor,

      Respondents.

On Petition for an Order Compelling Respondents
to Cease Unreasonable Delay and to Initiate a Rulemaking
on Hexavalent Chromium

Submitted under Third Circuit LAR 34.1(a)
March 13, 1998

Before: GREENBERG, SCIRICA and ALDISERT,
Circuit Judges.

(Filed March 16, 1998)

Order Amending Memorandum Opinion
Filed March 16, 1998

Colette G. Matzzie
David C. Vladeck
PUBLIC CITIZEN LITIGATION
GROUP
1600 20th Street, N.W.
Washington, D.C. 20009

 Attorneys for PETITIONERS

John Shortall
Marvin Krislov, Deputy Solicitor for
National Operations
Joseph M. Woodward, Associate
Solicitor for Occupational Safety and
Health
Barbara Werthmann, Counsel for
Appellate Litigation
UNITED STATES DEPARTMENT OF
LABOR
200 Constitution Avenue, N.W.
Washington, D.C. 20210

 Attorneys for RESPONDENTS

John L. Wittenborn
Michael O. Hill
Joseph J. Green
COLLIER, SHANNON, RILL &
SCOTT, PLLC
3050 K Street, N.W.
Washington, D.C. 20007

Gary M. Marek
KITTREDGE, DONLEY, ELSON,
FULLEM & EMBICK, LLP
421 Chestnut Street
Philadelphia, PA 19106

 Attorneys for INTERVENOR
 THE CHROME COALITION

2

Andre Shramenko
Glenn C. Merritt
FITZPATRICK & WATERMAN
400 Plaza Drive
Secaucus, NJ 07096

 Attorneys for INTERVENOR
 COLOR PIGMENTS MANUFACTURERS
 ASSOCIATION, INC.

OPINION OF THE COURT

ALDISERT, Circuit Judge.

Before the Court is not a petition for review of the final order of an administrative agency but a petition for an order compelling the respondents, the Occupational Safety and Health Administration ("OSHA"), its Acting Administrator and the Secretary of Labor, to cease unreasonable delay in rulemaking on hexavalent chromium. In addition, petitioners Oil, Chemical and Atomic Workers Union and Public Citizen's Health Research Group request this court to: (1) retain jurisdiction to monitor OSHA's performance; (2) require OSHA to submit periodic status reports; (3) authorize petitioners to conduct discovery before recommending to this Court a feasible schedule for the rulemaking and (4) direct OSHA to issue a proposed rule and a final standard for hexavalent chromium within a firm timetable.

Petitioners allege that we have subject matter jurisdiction over their claims pursuant to three statutes: (1) The All Writs Act, 28 U.S.C. S 1651(a), (2) the judicial review provisions of the Occupational Health and Safety Act, 29 U.S.C. S 655(f), and (3) the Administrative Procedure Act, 5 U.S.C. S 706(1). We hold that a writ of mandamus is not available under these circumstances and, even though this Court is vested with jurisdiction to review the Secretary's actions for unreasonable delay, the facts here do not warrant our intervention in the agency's rulemaking. We will therefore deny the petition.

3

I.

Chromium has, in one form or another, been used since the eighteenth century in various industries, most significantly in the production of metal alloys. Chromium VI, or hexavalent chromium, is a structural and anti-corrosive element which has been used in the metal, chemical, pigment, aviation and graphics industries, among others.1 In 1997, OSHA estimated that between 200,000 and 700,000 workers in these industries are regularly exposed to hexavalent chromium. 62 Fed. Reg. at 21978 (1997).

In 1971, in response to concerns that hexavalent chromium is a carcinogen, OSHA exercised its rulemaking authority and adopted a national consensus standard for hexavalent chromium. See 29 U.S.C. S 655(a) (directing the Secretary to promulgate such standards immediately upon passage of the OSH Act in 1970). This standard, which is still in effect today, set for workers a permissible exposure limit ("PEL") of 100 micrograms of chromium per cubic meter of air (100 ug/m3). 29 C.F.R. S 1910.1000.

In July 1993, Petitioners filed their first petition for rulemaking with OSHA requesting emergency action under the OSH Act, 29 U.S.C. S 655(c).2  That petition pointed to contemporary studies of the elevated risks of respiratory cancer for workers exposed to hexavalent chromium, and requested that the Secretary immediately lower the PEL for hexavalent chromium in the workplace. The Secretary declined to set an emergency temporary standard because he found the evidence insufficient to support the allegation that a standard was immediately "necessary" to protect

_____

1. Hexavalent chromium includes agents such as chromic acid (used in chrome plating), potassium dichromate (chemistry and various industries) and lead chromate (pigment).

2. 29 U.S.C. S 655(c) provides, in relevant part:

> The Secretary shall provide . . . for an emergency temporary standard . . . if he determines (A) that employees are exposed to grave danger from exposure to substances or agents determined to be toxic or physically harmful or from new hazards, and (B) that such emergency standard is necessary to protect employees from such danger.

4

workers from such a "grave danger." Instead, OSHA undertook research into proposed rulemaking regarding hexavalent chromium. "We anticipate," it wrote the petitioners, "that Notice of Proposed Rulemaking will be published in the Federal Register not later than March 1995."

Because of many unanticipated factors--the release of a breakthrough study on workers exposed to chromium which necessitated detailed examination, "the results of the November 1994 elections" in Congress, government shutdowns, budget cuts, the need to study potential compliance with a new PEL, the need to consult with small businesses and the reprioritizing of other agency projects-- OSHA has not issued a notice of proposed rulemaking on hexavalent chromium. It now anticipates a September 1999 date as its tentative deadline for a rulemaking proposal.

II.

A.

This is an unusual petition requesting extraordinary relief. First, we must set forth our jurisdictional posture to consider such a petition. We find that under the OSH Act, this Court is vested with jurisdiction to conduct judicial review over health and safety standards issued by the Secretary of Labor, as well as over claims in which the Secretary has not yet acted but where her delay is allegedly unreasonable. The OSH Act, 29 U.S.C. S 655(f), provides:

> Any person who may be adversely affected by a standard issued under this section may at any time prior to the sixtieth day after such standard is promulgated file a petition challenging the validity of such standard with the United States court of appeals for the circuit wherein such person resides or has his principal place of business, for a judicial review of such standard.

On its face, the statute grants jurisdiction to the courts of appeals for standards already issued by the Secretary. Nevertheless, courts have interpreted the OSH Act's grant

5

of jurisdiction, when read in conjunction with the APA, as enabling judicial review not only of standards already promulgated, but also of "agency action unlawfully withheld or unreasonably delayed". See Action on Smoking & Health v. Department of Labor, 28 F.3d 162, 163–164 (D.C. Cir. 1994) (OSH Act S 655(f) and APA "respectively confer jurisdiction on this court . . . over suits seeking relief from agency inaction or delay that jeopardizes our future statutory power of review."); Public Citizen's Health Research Group v. Brock, 823 F.2d 626, 629 (D.C. Cir. 1987) (reviewing OSHA's delay in rulemaking). In fact, where administrative enabling statutes such as the OSH Act grant exclusive jurisdiction to a particular court to review past actions of an agency, that court necessarily has the exclusive jurisdiction to review inaction, as well. See Telecommunications Research & Action Ctr. v. FCC, 750 F.2d 70, 75 (D.C. Cir. 1984).

Next, because this Court has been vested with exclusive jurisdiction over OSHA standards, the APA determines the scope of our review when standards have not yet been promulgated: "To the extent necessary," we shall "compel agency action unlawfully withheld or unreasonably delayed". 5 U.S.C. S 706(1); see also Williams v. National School of Health Tech., Inc., 836 F. Supp. 273, 280 (E.D. Pa. 1993) ("The correct mechanism for bringing a claim of unreasonable delay in promulgating regulations is the Administrative Procedure Act (`APA') which specifically provides that a court may `compel agency action unreasonably delayed.' 5 U.S.C. S 706(1).").

B.

Applying these principles to review OSHA's rulemaking process for unreasonable delay here, we are called upon to balance the importance of the subject matter being regulated with the regulating agency's need to discharge all of its statutory responsibilities under a reasonable timetable. See Environmental Defense Fund v. United States Nuclear Regulatory Comm'n, 902 F.2d 785, 789–790 (10th Cir. 1990); Cutler v. Hayes, 818 F.2d 879, 896 (D.C. Cir. 1987). With this balance in mind, unreasonable delay should be measured by the following factors:

6

> First, the court should ascertain the length of time that has elapsed since the agency came under a duty to act. Second, the reasonableness of the delay should be judged in the context of the statute authorizing the agency's action. Third, the court should assess the consequences of the agency's delay. Fourth, the court should consider "any plea of administrative error, administrative inconvenience, practical difficulty in carrying out a legislative mandate, or need to prioritize in the fact of limited resources."

The Raymond Proffitt Found. v. United States Envtl. Protection Agency, 930 F. Supp. 1088, 1102 (E.D. Pa. 1996) (quoting In re Chem. Workers Union, 958 F.2d 1144, 1149 (D.C. Cir. 1992)). In the end, application of these factors to a particular case is fact-intensive. We must begin a discussion of agency action, or inaction, by affording the agency "considerable deference in establishing a timetable for completing its proceedings." Cutler, 818 F.2d at 896.

Distilled to its essence, this petition by Oil, Chemical and Public Citizen would have us intrude into the quintessential discretion of the Secretary of Labor to allocate OSHA's resources and set its priorities. It is certainly true that "[d]elays that might be altogether reasonable in the sphere of economic regulation are less tolerable when human lives are at stake." Cutler, 818 F.2d at 989; see also Environmental Defense Fund, 902 F.2d at 789. This presupposes, however, that the evidence before the agency sufficiently demonstrates that delay will in fact adversely affect human health to a degree which necessitates a priority response. The Petitioners allege that between 88 and 342 out of every 1,000 workers exposed to hexavalent chromium will die from cancer attributable to the chromium exposure. Petitioners' Mem. at 17. On the other hand, the Respondents and Intervenors raise serious questions about the validity of the data and assumptions underlying the Petitioners' calculations. For example, Intervenor Color Pigments Manufacturers Association, Inc. argues that the Petitioners are wrong to assume that all workers in industries dealing with chromium in some way or another are exposed to 100 ug/m3 hexavalent chromium, every working day for 45 years. Color Pigments asserts that

7

this calculation is faulty because it fails to consider that 1) OSHA's lead PEL standard, 29 C.F.R. S 1910.1025(c), reduces all workers' lead exposure, which in turn reduces chromium exposure by one-half for workers in the pigment industry; 2) pigment workers often breathe through respirators which protect them from exposure to lead and chromium and 3) the Petitioners' calculations fail to distinguish between lead chromate, a chromium compound with levels of bioavailability and toxicity that have not been linked to any cancer, and other hexavalent chromium compounds used in different industries. Id. at 5-8. In addition, Intervenor The Chrome Coalition points to a plethora of studies which demonstrate the inconclusivity of hexavalent chromium's role in causing cancer because the effects of smoking and asbestos exposure on workers have not been fully considered. Chrome Coalition Mem. at 14-15 n.10. Faced with such varying data and differing interpretations as these studies represent, this Court is not in a position to tell the Secretary how to do her job.

"OSHA not only possesses enormous technical expertise we lack, but must juggle competing rulemaking demands on its limited scientific and legal staff." Brock, 823 F.2d at 629; see also Environmental Defense Fund, 902 F.2d at 789. Its various obligations notwithstanding, OSHA has been far from idle in its consideration of hexavalent chromium. This is not a subject matter to which the agency has never given a thought, but is rather already regulated in the workplace by the agency's current standards. Moreover, OSHA has amassed a wealth of data reanalyzing the health risks of hexavalent chromium and is currently in the process of collecting information about the feasibility of any proposed alterations to the standards now in place. Although 5 U.S.C. S 706(1) directs reviewing courts to "compel agency action unlawfully withheld or unreasonably delayed," we are satisfied that the facts alleged here do not demonstrate inaction that is either contrary to a specific Congressional mandate, in violation of a specific court order or unduly transgressive of the agency's own tentative deadlines. Cf. United Steelworkers of America v. Pendergrass, 819 F.2d 1263, 1270 (3d Cir. 1987) (enforcing prior judgment); United Steelworkers of America v. Auchter, 763 F.2d 728, 739 (3d Cir. 1985) (ordering reformulation of

standard to comply with statutory directive). We therefore conclude that, on the record accompanying this petition, OSHA has not "unlawfully withheld or unreasonably delayed" the responsibility of rulemaking.

III.

Having concluded that the facts and the law presented before us do not establish a necessity for us to intervene in the Secretary's discretion to conduct the affairs of OSHA in this matter, it is clear that we do not have the authority to grant relief under the All Writs Act, 28 U.S.C.S 1651(a). "In order to secure a writ of mandamus, petitioner must establish that the government officer in question has a non-discretionary duty to perform the specified action. The legal duty must be `clear and indisputable.' " See Virgin Islands v. Douglas, 812 F.2d 822, 832 (3d Cir. 1987). On the basis of the allegations contained in the petition and the responses to them, we cannot grant relief under the concept of mandamus. Howsoever other courts of appeals may construe this writ, the tradition of this Court and its ruling case law severely limit the grant of mandamus relief. A writ is not available here.

* * * * * * *

We have considered all arguments advanced by the parties and have concluded that no further discussion is necessary.

The petition for an order will be denied.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit